**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD MERCALDO,** | : | **Civil No. 1:13-CV-1139** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **( Judge Jones)** |
| | : | |
| **J. WETZEL, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of The Case

#### A.      Procedural History

This is a *pro se* civil rights case which was first filed by the plaintiff, a state prisoner, on April 29, 2013.  (Doc. 1.)  In his initial 31-page complaint Mercaldo catalogued an array of claims against state officials involving alleged confiscation of property, verbal harassment, the filing of false disciplinary infractions, the conditions of his confinement and the nature of the medical care Mercaldo has received for a series of thoroughly described genital and colon-rectal ailments.  (Doc. 1)

The breadth of these factual averments was matched by the ambitious scope of the claims of personal liability which Mercaldo made in this initial complaint. Mercaldo's initial complaint named a total of 47 defendants, 21 of whom were various prison supervisors ranging from the Secretary of the Department of

Corrections, to various superintendents, majors, captains, lieutenants and other managerial staff. As to these defendants, Mercaldo's allegations were largely premised upon their supervisory status, coupled in some instances with Mercaldo's perception that they did not adequately look into various complaints and grievances which he may have lodged in the past.

Along with his complaint, Mercaldo filed a motion seeking leave to proceed *in forma pauperis.* (Doc. 2) While we granted the motion for leave to proceed *in forma pauperis*, (Doc. 2), as part of our legally-mandated screening review we found that Mercaldo had failed to state a claim upon which relief may be granted with respect to the 21 supervisory defendants named in his complaint. Therefore, we recommended that the Court dismiss the claims lodged against these defendants for failure to presently state a claim upon which relief can be granted, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint.

The district court adopted this recommendation, (Doc. 11), and Mercaldo has now filed an amended complaint. (Doc. 18) This amended complaint reduces the number of defendants in this lawsuit from 47 to 32, but still includes some supervisory officials as defendants. (Id.) The amended complaint also names five correctional officials as defendants but simply describes them as witnesses to alleged

wrongdoing by others. Finally, the amended complaint presents a claim under the Americans With Disabilities, Act, (ADA) 42 U.S.C. §12101. This ADA claim, however, sounds in medical malpractice rather than discrimination, with Mercaldo simply alleging that prison officials failed to provide him with necessary and adequate accommodations to care for his various colon-rectal disorders, including providing him a private cell in which to bathe and care for himself. (Id., ¶¶59-78.)

We have now conducted a second screening analysis of this amended complaint. For the reasons set forth below, we conclude that a number of the remaining claims and defendants in the amended complaint are subject to dismissal. Specifically, we recommend that the plaintiff's complaint be dismissed with respect to the following supervisory defendants or correctional staff who are simply alleged to have witnessed wrongdoing by others–defendants Fisher, Hollibaugh, Lear, Long, Driebelis, Merrill, Harris, Schroeder, Diehl and Terwilliger. In addition, Mercaldo's claims under the Americans With Disabilities Act, (ADA) 42 U.S.C. §12101, which sound in medical malpractice rather than discrimination should also be dismissed.

## II.     Discussion

### A.     Screening of *Pro Se In forma Pauperis* Complaints–Standard of Review

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to

properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint).

**B. Mercaldo's Complaint Fails to State Claims of Supervisory Liability Against Defendants Fisher, Hollibaugh, Lear, Long and Driebelis**

In this case Mercaldo has named 5 supervisory defendants in his amended complaint–defendants Fisher, Hollibaugh, Lear, Long and Driebelis–but still has not alleged sufficient facts to give rise to supervisory liability against these officials. In considering claims brought against supervisory officials arising out of alleged

constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").  Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.  O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and*

*acquiesced in them.* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)."

Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, in many instances Mercaldo does little more than name a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading. To the extent that Mercaldo simply premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can Mercaldo sustain a supervisory liability claim against these officials by simply alleging in a talismanic fashion that they failed to train, oversee or supervise their subordinate employees. In this regard, we note that: " 'Numerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.' Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012). To the extent that supervisory liability survives after Iqbal, the scope of that

liability is clearly and narrowly defined.  As the United States Court of Appeals for the Third Circuit has observed:  "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

Mercaldo cannot rely upon either of these theories of supervisory liability to support his current complaint.  First, Mercaldo has not alleged well-pleaded facts showing that "the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).  Moreover, there is no claim of supervisory liability here grounded upon an assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm," Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010), since

Mercaldo has not identified any policy of the Department of Corrections which led to the various injuries which he alleges that he has suffered.

Furthermore, to the extent that Mercaldo's supervisory liability claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances, this claim also fails. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does

not implicate a constitutional concern.").  As the United States Court of Appeals for

the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system.  The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); See also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third

Circuit has recently held that summary dismissal is appropriate "because there is no

apparent obligation for prison officials to investigate prison grievances.  See Inmates

of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)."  Paluch v.

Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, as presently drafted, the plaintiff's claims against these five supervisory

defendants continue to consist of little more than assertions of *respondeat superior*

liability, coupled with dissatisfaction with the processing of this inmate's past

grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

> **C.**      **The Plaintiff's Amended Complaint Names Five Defendants, But Only Alleges That These Individuals Reported to Mercaldo That They Witnessed Alleged Wrongdoing By Others**

Further, we note that Mercaldo's amended complaint in some respects seems to confuse the status of witnesses with that of defendants. For example, Mercaldo alleges that he has received retaliatory disciplinary citations. In connection with this claim Mercaldo's amended complaint identifies five correctional staff who Mercaldo alleges have confided in him that he has been the victim of retaliatory conduct by other prison officials–defendants Merrill, Harris, Schroeder, Diehl and Terwilliger. Mercaldo's amended complaint does not allege that these staff actually retaliated against him; rather, he simply seems to contend that they told him that others had engaged in retaliatory actions. However, on the basis of this assertion, which essentially describes these staff as witnesses to alleged misconduct by others, Mercaldo names them as defendants.

These claims in our view also fail. Mercaldo has not alleged that these staff participated in any retaliatory actions, or acquiesced in this retaliatory discipline. In fact, the allegations that these prison staff defendants reported this allegedly

retaliatory conduct to Mercaldo seems to suggest that they did not participate, or acquiesce in, these actions. Therefore, the fact that these officers allegedly reported to Mercaldo that he had been the subject of retaliatory conduct by others, standing alone, does not give rise to civil rights liability and these defendants should also be dismissed.

### D.    Mercaldo's Claims under the Americans with Disabilities Act Also Fail

In his amended complaint, Mercaldo also seeks to bring a claim under the Americans With Disabilities Act, (ADA) 42 U.S.C. §12101. This ADA claim, however, sounds in medical malpractice rather than discrimination, with Mercaldo simply alleging that prison officials failed to provide him with necessary and adequate accommodations to care for his various genital and colon-rectal disorders, including providing him a private cell in which to bathe and care for himself. (Doc. 18, ¶¶59-78)

Such averments are inadequate to state a claim under the ADA in this prison medical setting. Indeed, it is well-settled that "the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners ... [t]he ADA does not create a remedy for medical malpractice." Iseley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006) quoting Bryant v. Madigan, 84 F.3d 246, 248 (7th

Cir.1996). Therefore, when an inmate " does not claim that he was excluded from any program on the basis of his disability, [but] [r]ather he claims that he was denied medical treatment for his disabilities, [his claim] is not encompassed by the ADA's prohibitions" and should be dismissed. Id. As the United States Court of Appeals has recently observed in affirming the dismissal of a similar ADA claim brought by a state prisoner and grounded on allegations of medical malpractice: "To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See 42 U.S.C. § 12132. P[laintiff]'s complaint asserted that defendants violated the ADA and failed to allege any facts that demonstrated that the alleged inadequate or improper medical care he received was *because of* a disability. Consequently, dismissal of this claim was appropriate." Pierce v. Pitkins, 12-4083, 2013 WL 1397800 (3d Cir. Apr. 8, 2013). See, e.g., Brown v. Deparlos, 492 F. App'x 211, 215 (3d Cir. 2012)(same); Brown v. Pennsylvania Dep't of Corr., 290 F. App'x 463, 467 (3d Cir. 2008).

These principles apply here and are fatal to this particular ADA claim. Since, fairly construed, Mercaldo's amended complaint does not allege discrimination

because of a disability, but simply asserts a failure to adequately treat a disabling condition, it fails to state a claim under the ADA, and Mercaldo's ADA claim should be dismissed.

Having conducted this screening analysis and determined that Mercaldo's amended complaint is still wanting, both with respect to 10 defendants named in this pleading and with regard to the ADA claim set forth in the amended complaint, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). With respect to the defendants and claims in this amended complaint which we have identified as deficient in this Report and Recommendation, in this case the Court has previously provided the plaintiff with ample opportunities to amend these pleadings, but to no avail. The current amended complaint still fails to state a viable civil rights cause of action against these defendants, and actually repeats assertions that were previously found to be legally insufficient. Since the plaintiff has been afforded opportunities to correct the deficiencies identified in his prior complaint with respect to these defendants, has failed to state a viable civil rights cause of action, and the factual and

legal grounds proffered in support of the second amended complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore it is recommended that the amended complaint be dismissed with respect to these 10 defendants and the plaintiff's ADA claim without further leave to amend.

### III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows:

1.      That the plaintiff's complaint be dismissed with respect to the following defendants– Fisher, Hollibaugh, Lear, Long, Driebelis, Merrill, Harris, Schroeder, Diehl and Terwilliger.

2.      Mercaldo's claims under the Americans With Disabilities, Act, (ADA) 42 U.S.C. §12101, which sound in medical malpractice rather than discrimination should also be dismissed.

3.      The amended complaint should be served on the remaining defendants named in that pleading.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties,

written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of December, 2013.


*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge