## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD MERCALDO,** | : | **Civil No. 1:13-CV-1139** |
| | : | |
| **Plaintiff** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **WETZEL, BARNACLE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

## I.    INTRODUCTION

This is a civil action initiated by Richard Mercaldo, an inmate in the custody of the Pennsylvania Department of Corrections.  The many incidents that Mercaldo has complained about in this litigation are claimed to have occurred at the State Correctional Institution at Smithfield.

The amended complaint brought a number of disparate claims against an array of different defendants, which may be corralled into a number of general categories:  (1) claims that Corrections Officers Shirey and Diehl issued Mercaldo a misconduct in retaliation for Mercaldo exercising protected First Amendment rights; (2) due process and access-to-court claims relating to a May 2011 cell search; (3) medical claims against health-care providers relating to Mercaldo's

treatment for colo-rectal issues; (4) allegations that he was unlawfully subjected to second-hand tobacco smoke; (5) retaliation and excessive force claims arising from an August 2011 incident; (6) retaliation claims relating to incidents in April 2012 and January 2013; and (7) a class-of-one equal protection claim.

Most of Mercaldo's claims remain live in this action, although the District Court has dismissed his class-of-one equal protection claim, any claim against Officers Price and Boland for verbal harassment, and the retaliation claims brought against defendants Brindle, Fichter, Fouse, Sheetz, and Boyd.

Now pending before the Court is Mercaldo's motion for entry of an Order compelling the defendants to produce additional responses to his discovery requests. (Doc. 117.)  The motion is fully briefed and for the reasons that follow the motion will be denied.  In short, Mercaldo has not demonstrated that the defendants' improperly withheld responsive materials, and the defendants have made a compelling showing that their responses have been adequate and have balanced Mercaldo's interest in receiving relevant, responsive information with the Department of Corrections' interest in not needlessly disclosing sensitive materials that implicate important institutional security interests, or otherwise responding more fulsomely to discovery requests that seek information that is irrelevant to the claims in this case, or which are unduly burdensome.  Accordingly, the motion to compel will be denied.

## II.   <u>STANDARD OF REVIEW</u>

If a party believes in good faith that another party has failed to respond adequately or appropriately to a discovery request, he may move for an order compelling disclosure or discovery.  Fed. R Civ. P. 37(a)(1).  The rule specifically permits a party to file a motion to compel the production of documents.  Fed. R. Civ. P. 37(a)(3)(iv).  In this case, Mercaldo is seeking to compel further responses to document requests that he has propounded in support of his claims.

Rule 26(b), in turn, generally defines the scope of discovery permitted in a civil action, and prescribes certain limits to that discovery.  That rule, which was most recently amended as of December 1, 2015, now provides as follows:

> **(b)   Discovery Scope and Limits.**
>
> **(1)   *Scope in General*.**  Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).[1]  Evidence is considered to be "relevant 'if it has any tendency to make a fact more or less probable that it would be without the evidence' and 'the fact is of consequence in determining the action.'"  *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2016 WL 3519618, at *3 (E.D. Pa. June 28, 2016) (quoting Fed. R. Evid. 401).

Rulings regarding the proper scope of discovery, and the extent to which further discovery responses may be compelled, are matters committed to the court's judgment and discretion.  *Robinson v. Folino*, No. 14-227, 2016 WL 4678340, at *2 (W.D. Pa. Sept. 7, 2016) (citation omitted); *see also Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987).  Although decisions relating to the scope of discovery rest with the discretion of the district court, that discretion is nevertheless limited by the scope of Rule 26 itself, which reaches only "nonprivileged matter that is relevant to any party's claim or defense."  Accordingly, "[t]he Court's discretion in ruling on discovery issues is therefore

---

[1]  Rule 26(b)(1) was amended effective December 1, 2015, after this lawsuit was initiated.  However, on April 29, 2015, the United States Supreme Court ordered that these amendments would apply to all proceedings commenced on or after December 1, 2015, and all proceedings then pending, "insofar as just and practicable."  Order ¶ 2 (U.S. Apr. 29, 2015); see also Fed. R. Civ. P. 86(a)(2) (amended rules govern pending actions unless their application "would be infeasible or work an injustice").  There appears to be nothing unjust or impractical about applying Rule 26(b)(1), as amended, in this case and neither Mercaldo nor the defendants have suggested otherwise.  Accordingly, the court finds that Rule 26)(1), as amended in December 2015, applies to this case and the scope of discovery permitted.  *See Robinson*, No. 14-227, 2016 WL 4678340, at *2 n.1; *United States v. Abbott Labs*, No. 09-4264, 2016 WL 4247429, at *2 n.3 (E.D. Pa. Aug. 11, 2016).

restricted to valid claims of relevance and privilege." *Robinson*, No. 14-227, 2016 WL 4678340, at *2 (citing *Jackson v. Beard*, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits. . . . Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

"A party moving to compel bears the initial burden of showing the relevance of the requested information." *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that burden is satisfied, the party resisting the discovery has the burden to establish that the discovery being sought is not relevant or is otherwise inappropriate. *Robinson*, No. 14-227, 2016 WL 4678340, at *2.

## III. DISCUSSION

### A. Policy Manuals 6.3.1 and 6.5.1

One of the principal disputed areas of discovery in this case involves Mercaldo's efforts to secure from the defendants copies of two confidential procedural manuals, 6.3.1 relating to facility security, and 6.5.1, which relates to administration of Level 5 housing units. The defendants specifically identified the policies as being potentially responsive to certain of Mercaldo's discovery requests, and they objected to the release of the manuals, which they regard as

particularly sensitive and inappropriate for release to a *pro se* inmate. Mercaldo has not responded in a way that persuades the Court that his interest in reviewing unredacted copies of these confidential manuals outweighs the defendants' institutional interest in keeping these security-related documents out of inmate hands.

As the defendants have aptly noted, numerous federal courts in Pennsylvania have sustained the Department of Corrections' objections to wholesale release of the procedures manual to policy 6.5.1 and 6.3.1, and have denied substantially similar motions to compel filed by other inmates. *See, e.g., Houser v. Pa. Dep't of Corr.*, Civ. A. 13-cv-1068, 2015 U.S. Dist. LEXIS 21254, at *11-12, 2015 WL 757552 (W.D. Pa. Feb. 23, 2015) (finding that to permit inmate access to 6.5.1's confidential internal working procedures for staff dealing with Security Level 5 RHU inmates would create a "substantial security risk"); *Whitney v. Wetzel*, Civ. A. No. 2:12-cv-1623, 2014 U.S. Dist. LEXIS 155226, at *4-5, 2013 WL 5513481 (W.D. Pa. Oct. 31, 2014) (finding that policy 6.5.1 "is a privileged and confidential document that addresses the administration of Security Level 5 Housing Units."); *Spencer v. Collins*, 2013 WL 5176747, at *2 (M.D. Pa. Sept. 12, 2013) (finding defendants' safety and security concerns about releasing the 6.5.1 manual outweighed the plaintiff's interest in its production); *Mikell v. Moore*, 2013 U.S. Dist. LEXIS 29675, at *22-24 (M.D. Pa. Mar. 5, 2013) (refusing to compel

6

production of sections of 6.3.1 and 6.5.1 relating to double celling inmates); *Huertas v. Beard*, No. 101-, 2012 U.S. Dist. LEXIS 105631, 2012 WL 3096430, at *3 (W.D. Pa. July 30, 2012); *Bailey v. McMahon*, No.1:CV-07-2238, 2012 U.S. Dist. LEXIS 52211, 2012 WL 1246147, at *7 (M.D. Pa. Apr. 12, 2012) (denying motion to compel production of DC-ADM 6.5.1, agreeing with Department of Corrections' assertion that its interest in confidentiality and institutional security outweighed plaintiff's interest in reviewing the manuals); *Victor v Lawler*, Civ. A. No. 3:08-CV-1374, 2011 U.S. Dist. LEXIS 53133, 2011 WL 1884616 (M.D. Pa. May 18, 2011) ("[We find that release of policy manuals [6.3.1 and 6.5.1] themselves would undermine institutional security.").

In addition, the Department of Corrections has provided the Court with a declaration from Major S. Bowman, its Chief of Security, explaining why disclosure of the requested portions of the manuals and policies would present a security concern.  (Doc. 118, Ex. B, Declaration of Major S. Bowman.)  In his declaration, Major Bowman represents that the Facility Procedures Manuals 6.5.1 and 6.3.1 are "confidential documents to which inmates are not permitted access." (*Id.* ¶ 6.)  He also attests that the disclosure of these materials "may jeopardize the safety and security of the institution."  (*Id.* ¶ 7.)  According to Major Bowman, these documents contain directions and guidance to corrections staff regarding security-sensitive aspects of their duties, the disclosure of which could allow

inmates to circumvent the procedures that are set forth in the policies.   (*Id.*)

Manual 6.5.1 contains sensitive information relating to the administration of Level

5 Housing Units, including information relating to the supervision, control, and

safety of inmates in those units.   Manual 6.3.1 contains, *inter alia*, information

regarding the policies and procedures governing cell searches, including directives

on what section of a cell must be searched and in what order.   The Manual also

contains sensitive policy information and guidelines to be followed during forcible

cell extractions.   Major Bowman maintains that revealing this information to

inmates would undermine institutional security, and Mercaldo has not responded

persuasively to this assertion.

Not only has Mercaldo failed to respond in a compelling way to these

institutional security concerns, but his stated justification for this discovery is

equally unpersuasive.   He claims to need Manual 6.5.1 in order to determine

whether the denial of his request for Z-Code housing was properly justified,

whether guards followed procedures when removing him from his cell, and to learn

generally "what is and what is not proper procedure" for cell extractions.   (Doc.

117, ¶¶ 5-7.)

But Mercaldo's claimed need for this information is hardly clear when

contrasted to what he has actually alleged in this case.   Although he has challenged

the level of force that Sergeant Grove used when escorting him from his cell, he

has not alleged that he was subjected to a cell extraction, and it is not clear why he would need to review the policy manual regarding planned use of force. Moreover, the defendants have produced the Department of Corrections' general policy on use of force, DC-ADM 203, which would seem to address Mercaldo's equally general claims about rough treatment.

Furthermore, and significantly, Mercaldo is not basing his claims on whether the defendants abridged the procedures prescribed by either policy manual. Instead, he has independently claimed that his treatment by various defendants in a number of circumstances, spanning a relatively lengthy period of time, violated his rights under the United States Constitution, not the Department's own policies. As the subject of an encounter during which he claims an officer used excessive force, Mercaldo is capable of attesting to the conduct he is challenging in this lawsuit, without relying upon language in a confidential prison manual, something other courts have recognized in similar circumstances. See, e.g., *Huertas v. Beard*, No. 101-, 2012 U.S. Dist. LEXIS 105631, 2012 WL 3096430, at *3 (W.D. Pa. July 30, 2012) ("Whether the defendants have acted in strict accordance with Policy 6.5.1 is not at issue, because we are not concerned with the possible violation of internal prison policy but rather the alleged violation of plaintiff's federal constitutional rights, which exist quite independently of any authorization contained in DC-ADM 6.5.1.").

We agree with the defendants that their interest in maintaining the confidentiality of the information contained in Policies 6.5.1 and 6.3.1 outweighs Mercaldo's stated interest in reviewing these materials in support of claims that really do not rely upon the policies themselves.

## B.     Request No. 1 -- Other Grievances and Complaints

As often happens in cases of this kind, Mercaldo has propounded vastly overbroad discovery requests that direct the defendants to produce for his inspection copies of all grievances or complaints filed by inmates or staff pertaining to any of the named defendants.  The defendants have objected to this request as overly broad, irrelevant, and unreasonably burdensome.  The Court agrees.

Mercaldo actually led with this request, seeking production of "Any and all grievances, inmate or staff complaints, or other documents received by institutional staff, or Pennsylvania Department of Corrections staff . . . concerning the treatment of inmates by defendants . . .  and any memoranda, investigative files, or other documents or appeals created in response to such complaints, since January 2010." These are precisely the kinds of sweeping, generalized and overly broad discovery requests judges in the Middle District of Pennsylvania have rejected as being not only overly broad, but unduly infringing upon the privacy interests of other inmates who may have sought to grieve unrelated issues that they had with staff.

*See, e.g., Montanez v. Tritt*, Civ. No. 3:14-CV-1362, 2016 WL 3035310, at *4 (M.D. Pa. May 26, 2016) (denying motion to compel production of incident reports, grievances and other documents involving other inmates where they were found to be "overly broad, irrelevant, confidential, [and to] bear no sufficient connection to this case, and raise obvious privacy and security issues.") (Mariani, J.); *Lofton v. Wetzel*, Civ. No. 1:12-CV-1133, 2015 WL 5761918, at *2 (M.D. Pa. Sept. 9, 2015) (Conner, C.J.) ("It is apparent that [the plaintiff's] requests for 'any and all' records of inspection, and 'all' incident reports and grievances are a grossly overstated fishing expedition.   [His] request for incident reports and grievances regarding other inmates raises obvious privacy and security issues, and the relevance of such information is questionable at best."); *Sloan v. Murray*, No. 3:11-CV-994, 2013 WL 5551162, at *4 (M.D. Pa. Oct. 8, 2013) (Caputo, J.) (denying motion to compel grievance responses that concerned other inmates, citing DOC policy prohibiting inmates from receiving information about one another); *Torres v. Clark*, Civ. No. 1:10-CV-1323, 2011 WL 4898168, at *2-3 (M.D. Pa. Oct. 13, 2011) (Caldwell, J.) (denying motion to compel inmate request for discovery of 27-months of grievances about a specific cell block, finding it to be overly broad, burdensome, and potentially implicating privacy interests of other inmates); *McDowell v. Litz*, Civ. No. 1:CV-08-1453, 2009 WL 2058712, at *3 (M.D. Pa. July 10, 2009) (Rambo, J.) (finding requests for discovery of grievances

filed by non-party inmates to be "overbroad and overly burdensome" and agreeing with the defendants' "concerns about accessing private information with respect to other inmates' grievances."); *Callaham v. Mataloni*, Civ. No. 4:CV-06-1109, 2009 WL 1363368, at *3-4 (M.D. Pa. May 14, 2009) (Jones, J.) (denying motion to compel, inter alia, grievances relating to medical treatment of other inmates, citing privacy concerns); *cf. Banks v. Beard*, Civ. No. 3:CV-10-1480, 2013 WL 3773837, at *5 (M.D. Pa. July 17, 2013) (Munley, J.) (denying motion to compel account statements for other inmates despite plaintiff's claim of relevance).

In keeping with these decisions, the Court finds that Mercaldo's request for discovery of other grievance information is overly broad, since it seeks discovery of complaints of any nature, involving any subject matter, filed by non-party inmates or staff against the defendants.  The discovery request is of questionable relevance, is unbounded temporally or by subject, and is plainly burdensome and overly broad, and implicates important privacy interests.  Accordingly, the motion to compel further production of grievances and complaints filed by inmates or staff will be denied.

### C.    Request No. 6 -- Discovery of Policies Governing the Issuance of Misconducts

In Request No. 6, Mercaldo seeks to have the defendants produce "Any and all policies, directives, procedures, procedures manuals or instructions to staff concerning the issuance of misconducts to inmates by Central Office or SCI

Smithfield staff." The defendants responded by producing the procedures manual to DC-ADM 801 on "Inmate Discipline."

Mercaldo insists that there must be more than this policy manual, which was not only produced but is admittedly available to Mercaldo and other inmates in the prison library and on the DOC's own website. The defendants thus maintain that they have produced to Mercaldo the only document responsive to his request, and that there is no additional procedures manual dealing with the issuance of misconducts. On the basis of the production made to date, which is pertinent and seems to encompass the information Mercaldo sought; and because the defendants have affirmatively represented that they have no further policy manuals to produce, this aspect of the motion to compel will be denied.

### D.      Request No. 17 – Arthritis Treatment and Meals

In Request No. 17, Mercaldo requested "any policies, directives or procedures concerning the proper care to inmates with degenerative/joint disease/arthritis, and dietary problems with meals being served." The defendants apparently misread this request to be seeking information pertaining to the provision of therapeutic meals for inmates with arthritis. Accordingly, they produced the DC-ADM Food Service Procedures Manual, Section 2, "Therapeutic Diets." Mercaldo claims that response was insufficient, since he intended it as a

compound request for information on policies relating to arthritis care and to therapeutic meals.

Mercaldo's amended complaint does not contain any allegations or claims based on improper treatment for arthritis or degenerative joint diseases, or meals. Accordingly, the Court struggles to discern how this request is calculated to lead to the discovery of information that is relevant to this case and Mercaldo's claims. However, in the interest of completing the defendants' response, and in accordance with their own suggestion, the Court will direct that they provide Mercaldo with the non-confidential sections of the DOC's general healthcare policies: 13.2.1 Access to Health Care and 13.1.1 Management and Administration of Health Care.

### E.    Request No. 19 – Mercaldo's Own Grievances

In Request No. 19, Mercaldo requested "Any and all grievances, decisions, appeals, complaints, and missives, etc. filed by the plaintiff or SCI-Smithfield staff from January 1, 2010 to present."   The defendants objected to this request as overly broad, but invited Mercaldo to narrow his request and resubmit it; indeed, they provided Mercaldo with a list of the grievances that he had filed in order to assist him in identifying relevant documents to request.   Rather than engage in this interactive process that was intended to narrow Request No. 19 to something tailored and reasonable in scope, Mercaldo elected to file the instant motion to compel.

Mercaldo's resort to a motion to compel in the face of the defendants' effort to work with him to clarify and narrow his discovery request is unreasonable and undermines his request.  To the extent that Mercaldo wishes to be furnished with copies of past grievances that he has filed, he should review the list of grievances provided and advise the defendants as to which grievances he believes are relevant to his claims in this case so that the defendants may consider the request anew, and determine whether they have any legitimate objections to providing Mercaldo with a response to his narrowed request.  However, Mercaldo has not persuasively explained how a blanket request for production of all "grievances, decisions, appeals, complaints, and missives, etc." is reasonable or why further response to such a broad request should be compelled.

### F.     Request No. 21 – Mercaldo's Mental-Health Records

Lastly, in Request No. 21, Mercaldo seeks to be provided with his complete medical and psychological treatment records from January 1, 2005, to the present. The defendants cautiously responded by directing Mercaldo to the DC-ADM 003, which is the policy that provides inmates a mechanism to inspect their own medical records.  The defendants objected to responding further, however, citing concerns that the release of an inmate's mental-health records would reveal to the inmate candid evaluations of the inmate by professionals – information that the Department of Corrections guards carefully to avoid revealing this information to

inmates, who could use the information to help them manipulate future evaluations, and could undermine the Department's interest in providing adequate mental-health treatment to inmates.

Indeed, courts have been receptive to the Department of Corrections' concerns in analogous cases, where inmates have sought to use civil litigation as a means of obtaining access to their mental-health records through the process of discovery. *See, e.g., Spencer v. Collins*, No. 3:12-CV-00616, 2013 WL 5176747, at *2 (M.D. Pa. Sept. 12, 2013); *Banks v. Beard*, No. 3:CV-10-1480, 2013 WL 3773837, at *3 (M.D. Pa. July 17, 2013) ("With respect to the mental health records, were they made available to inmates or the public, DOC professionals would tend to refrain from entering candid opinions and evaluations. Consequently, decision-makers would not have the benefit of honest observations from professionals in the field.  Moreover, if an inmate knows how DOC staff will evaluate him and how particular behaviors are likely to be interpreted, he is capable of manipulating the resulting determination, which could lead to inaccurate assessments, improper institutional placements, and possible premature release from custody.  Based on the foregoing, defendants will not be compelled to produce any portion of plaintiff's mental health record."); *Rister v Lamas*, No. 4:10-cv-1574, 2012 WL 3758092, at *3-4 (M.D. Pa. Aug. 28, 2012).  The Court finds the reasoning of these decisions analogous and compelling in this case.

Equally importantly, it is not clear why Mercaldo is seeking to discover this information in the context of this lawsuit.  In his motion, he states that he is not under the care of mental-health providers, and he has not alleged a claim relating to mental-health treatment.  Accordingly, the Court does not find that Mercaldo has adequately explained the relevance of this sensitive discovery request, and finds no basis upon which to compel the defendants to produce sensitive mental-health treatment records that do not appear to have relevance to any claims in this action.  Accordingly, Mercaldo's request to compel production of his mental-health records will be denied.

## IV.   **ORDER**

AND NOW, this 6th day of October 2016, it is hereby ORDERED that the plaintiff's motion to compel is DENIED.

It is further ORDERED that the defendants shall provide the plaintiff with the non-confidential sections of the DOC's general healthcare policies:   13.2.1 Access to Health Care and 13.1.1 Management and Administration of Health Care, as they have offered to do.

It is further ORDERED that if the plaintiff wishes to narrow his request for his own grievance-related records, he should review the list of grievances that the defendants furnished him and provide them with a tailored request for a more

limited set of information, so that the defendants may evaluate the narrowed request and respond accordingly.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge